OPINION
{¶ 1} The following appeal was submitted on the briefs of the parties. Appellant, Donald G.Tripi, appeals from a judgment entry of the Mentor Municipal Court, convicting him of driving under the influence ("DUI") and resisting arrest. For the reasons that follow, we affirm.
 {¶ 2} The instant appeal arises from a traffic citation and criminal complaint which resulted in the following charges: (1) DUI, a violation of R.C. 4511.19(A)(1); (2) resisting arrest, a violation of R.C. 2921.33; (3) failure to use turn signal, a violation of R.C. 4511.39; and (4) marked lanes infraction, a violation of R.C. 4511.33. On appeal, appellant only challenges his convictions of DUI and resisting arrest.
 {¶ 3} Appellant moved to suppress any evidence relating to the traffic stop which resulted in his arrest and the foregoing charges. Specifically, appellant's motion to suppress argued that the police officer who initiated the traffic stop did not have adequate probable cause to arrest him.
 {¶ 4} During a hearing on the motion to suppress, the parties stipulated that the police officer had probable cause to initiate a traffic stop based upon appellant's multiple traffic violations. As a result, the parties agreed that the only issue before the court was whether the police officer had probable cause to arrest appellant.
 {¶ 5} Patrolman Martin Turek (Ptlm. Turek), of the Mentor Police Department, testified during the suppression hearing. Ptlm. Turek stated that at approximately 12:15 a.m., on July 4, 2004, he was dispatched to a local Wal-Mart parking lot to investigate a report of two intoxicated individuals in a Ford Mustang. He parked his patrol car in the Wal-Mart parking lot and observed appellant and his girlfriend, Laura Hamilton ("Laura"), in a Ford Mustang. When appellant proceeded to drive the vehicle out of the parking lot, Ptlm. Turek followed.
 {¶ 6} After observing multiple traffic violations, Ptlm. Turek activated his emergency lights. Despite the emergency lights, appellant did not stop the vehicle for approximately a half mile. When Ptlm. Turek approached appellant he requested his license and registration. Ptlm. Turek testified that appellant had difficulty locating his license and, instead, handed him a roadside assistance card. He further testified that appellant emitted a very strong odor of alcohol, had glassy and blood shot eyes, and his speech was very slurred. Ptlm. Turek asked appellant if he had been drinking. Appellant told Ptlm. Turek that he had only been drinking non-alcoholic beers.
 {¶ 7} Ptlm. Turek asked appellant if he would be willing to take field sobriety tests. Appellant refused to take the field sobriety tests and told Ptlm. Turek that he would call a friend for a ride. Ptlm. Turek testified that, based upon his observations, he believed appellant was intoxicated and informed appellant that he was under arrest. Further testimony by Ptlm. Turek revealed that, despite his numerous demands, appellant refused to step out of the vehicle to be placed under arrest. A physical confrontation ensued during which appellant was forcibly removed from his vehicle.
 {¶ 8} Appellant and Laura provided testimony at the hearing which contradicted Ptlm. Turek's testimony. They stated that appellant did not consume any alcohol prior to the arrest. Appellant and Laura testified that Ptlm. Turek's testimony was false and that appellant did not exhibit characteristics of intoxication. Furthermore, they stated that appellant was not resisting arrest when he was forcibly removed from the vehicle.
 {¶ 9} At the conclusion of the hearing, the municipal court overruled appellant's motion to suppress. The court determined that the surrounding circumstances and Ptlm. Turek's observations provided adequate probable cause to arrest appellant.
 {¶ 10} This matter proceeded to a jury trial. During trial, three Wal-Mart employees testified as to their observations of appellant and Laura on the night of the arrest. Each employee testified that appellant and Laura were staggering throughout the store. They noted that appellant had blood shot and glassy eyes, and that his speech was slurred. One store employee described appellant and Laura as "stinking drunk." The employees stated that they believed appellant was intoxicated and contacted the authorities.
 {¶ 11} Ptlm. Turek again testified with respect to the surrounding circumstances of the traffic stop and appellant's arrest. In particular, he stated that after he informed appellant he was under arrest, appellant refused to leave the vehicle. Ptlm. Turek testified that he repeatedly instructed appellant to exit the vehicle because he was under arrest. Appellant refused to exit the vehicle and wedged his knees under the steering wheel so he couldn't be removed from the vehicle. Ptlm. Turek testified that due to appellant's refusal to exit the vehicle, he used physical force to remove appellant.
 {¶ 12} Patrolman Ryan Heramb ("Ptlm. Heramb"), of the Mentor Police Department, was assisting Ptlm. Turek during the arrest. Ptlm. Heramb corroborated Ptlm. Turek's observations regarding appellant's intoxication. He further verified that Ptlm. Turek repeatedly instructed appellant to exit the vehicle and repeatedly informed appellant that he was under arrest. When appellant refused to exit the vehicle, Ptlm. Heramb helped Ptlm. Turek physically remove appellant from the vehicle.
 {¶ 13} Ptlm. Turek also testified that appellant was placed in his patrol car to be transported to the police station. During transport, appellant passed out. At the police station, appellant had difficulty exiting the patrol car and lacked sufficient motor coordination to perform simple tasks.
 {¶ 14} Appellant and Laura testified at trial. Both testified that appellant was not drinking prior to his arrest. Rather, they stated that only Laura was intoxicated. Furthermore, appellant and Laura testified that Ptlm. Turek did not inform appellant that he was under arrest before forcibly removing him from the vehicle. Instead, it was their contention that Ptlm. Turek and Ptlm. Heramb, without warning, began to curse at appellant and physically remove him from the vehicle.
 {¶ 15} Following trial, the jury returned unanimous guilty verdicts on the counts of DUI and resisting arrest. The court entered judgment accordingly and proceed to sentence appellant.
 {¶ 16} From this judgment, appellant filed a timely notice of appeal and now sets forth the following three assignments of error for our consideration:
 {¶ 17} "[1.] The trial court erred by not granting defendant's motion to suppress.
 {¶ 18} "[2.] The jury verdict was against the manifest weight of the evidence.
 {¶ 19} "[3.] Defendant's Sixth Amendment rights were violated in that he had ineffective assistance of counsel."
 {¶ 20} Under his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress. In doing so, appellant contends that Ptlm. Turek's observations did not provide sufficient probable cause to arrest. Moreover, appellant contends that if Ptlm. Turek did not have sufficient probable cause to arrest, the evidence of resisting arrest would have also been inadmissible as fruit from the poisonous tree.
 {¶ 21} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288.
 {¶ 22} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank, 11th Dist. No. 2001-L-054, 2002-Ohio-1337.
 {¶ 23} When determining if the police had probable cause to arrest an individual for DUI, a court must consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio
(1964), 379 U.S. 89, 91. See, also, State v. Hynde, 11th Dist. No. 2004-P-0030, 2005-Ohio-1416, at ¶ 10. In making this determination, the court must examine the totality of the circumstances surrounding the arrest. Hynde at ¶ 10.
 {¶ 24} This court has consistently held that a police officer's observations of a strong odor of alcohol; blood shot and glassy eyes; and slurred speech can form the basis of police officer's probable cause to arrest for DUI. State v. Hancock,
11th Dist. No. 2004-A-0046, 2005-Ohio-4478, at ¶ 17; State v.Rendina (Dec. 23, 1999), 11th Dist. No. 98-L-129, 1999 Ohio App. LEXIS 6269, at 16-17. In addition, we have held that a defendant's refusal to take a field sobriety test may be taken into account when determining whether the police had probable cause to effectuate an arrest. Hancock at ¶ 17. See, also,State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926.
 {¶ 25} Here, the testimony of Ptlm. Turek provided the municipal court with sufficient evidence to establish probable cause to arrest. Namely, Ptlm. Turek observed that appellant emitted a strong odor of alcohol, had blood shot and glassy eyes, and slurred speech. Ptlm. Turek further noted that appellant refused to take field sobriety tests and instead suggested that he would call friends for a ride home. Additional evidence of appellant's inability to recognize or provide Ptlm. Turek with his license — instead handing Ptlm. Turek his roadside assistance card — further establishes probable cause for DUI. Although appellant and Laura provided contradictory testimony, the municipal court was in the best position to view the witnesses and evaluate their credibility.
 {¶ 26} Thus, the municipal court did not err in finding that Ptlm. Turek had probable cause to arrest. This portion of appellant's first assignment of error is not well-taken.
 {¶ 27} Because Ptlm. Turek had sufficient probable cause to effectuate an arrest, any subsequent evidence relating to the charge of resisting arrest would not have been inadmissible as fruit from the poisonous tree. This portion of appellant's first assignment of error is also not well-taken.
 {¶ 28} Appellant's first assignment of error is without merit.
 {¶ 29} Under his second assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. Specifically, he argues that the evidence before the jury established that Ptlm. Turek's version of the events surrounding the DUI and resisting arrest charges was not credible, and that Ptlm. Turek had an unknown ulterior motive to provide false testimony.
 {¶ 30} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 31} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 32} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 33} In the instant case, the jury was required to weigh conflicting evidence. Ptlm. Turek, Ptlm. Heramb, and the three Wal-Mart store employees testified as to their observations of appellant just prior to his arrest. These witnesses testified that appellant was clearly intoxicated. Also, Ptlm. Turek and Ptlm. Heramb provided nearly identical testimony of the events which resulted in the charge of resisting arrest.
 {¶ 34} Appellant and Laura testified that the foregoing witnesses' testimony was either not truthful or inaccurate. They stated that appellant had not been drinking prior to his arrest and that appellant was not resisting arrest when he was forcibly removed from the vehicle.
 {¶ 35} That being the case, the jury was in the best position to resolve this conflict. There was nothing unbelievable or incredible about the testimony of Ptlm. Turek, Ptlm. Heramb, and the three store employees. Thus, the jury was free to believe all, part, or none of their testimony and we will not substitute our judgment for that of the trier of fact. Because there was competent, credible evidence before the jury to convict appellant of DUI and resisting arrest, we cannot conclude that the convictions were against the manifest weight of the evidence. Appellant's second assignment of error is without merit.
 {¶ 36} Under his third assignment of error, appellant argues that he received ineffective assistance of trial counsel.
 {¶ 37} Both the Ohio Supreme Court and this court have adopted the following two-pronged test articulated in Stricklandv. Washington (1984), 466 U.S. 668, to determine whether an accused has received ineffective assistance of counsel:
 {¶ 38} "First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. * * * This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the `counsel' guaranteed by both the United States and Ohio Constitutions. * * *
 {¶ 39} "Second, a defendant must show that the deficient performance prejudiced his defense. * * * This requires a showing that there is `a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' * * * `A reasonable probability is a probability sufficient to undermine confidence in the outcome.' * * *" (Citations omitted.) State v. Swick (Dec. 21, 2001), 11th Dist. No. 97-L-254, 2001-Ohio-8831, 2001 Ohio App. LEXIS 5857, at 4-5. See, also, State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 40} First, appellant contends that his trial counsel was ineffective by failing to obtain a Wal-Mart surveillance video camera and by failing to subpoena a key witness. In both instances, appellant claims he was prejudiced by his counsel's failures, as the video and witness would have established he was not intoxicated. However, absent from the record is any proffer which would establish that the video and witness would have provided such evidence.
 {¶ 41} This court has consistently held that when a defendant makes a claim of ineffective assistance of counsel based upon facts outside the record, the appropriate remedy is a petition for postconviction relief. State v. Thomas, 11th Dist. No. 2001-L-185, 2003-Ohio-1584, at ¶ 12, citing State v. Songer
(Dec. 10, 1999), 11th Dist. No. 98-T-0100, 1999 Ohio App. LEXIS 5939, at 17. Stated differently, a postconviction relief petition is the only mechanism whereby a defendant can present evidence outside the original trial record. State v. Robinson (Aug. 4, 2000), 11th Dist. No. 98-L-164, 2000 Ohio App. LEXIS 3538, at 5.
 {¶ 42} Accordingly, because this portion of appellant's third assignment of error relies upon evidence not part of the record, it is impossible for this court to determine whether appellant was prejudiced by his trial counsel's alleged failure to obtain the video or subpoena the witness. This portion of appellant's third assignment of error is not well-taken.
 {¶ 43} Appellant further argues that he received ineffective assistance based upon his trial counsel's failure to properly raise or preserve the issue of probable cause to arrest via a Crim.R. 29(A) motion. And he maintains that his trial counsel was ineffective due to counsel's failure to aggressively cross-examine Ptlm. Turek.
 {¶ 44} Generally, counsel's failure to make a Crim.R. 29 motion does not constitute ineffective assistance of counsel when the state's case-in-chief links the defendant to the crimes of which he or she is accused. State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 17. In the instant case, the state's case-in-chief linked appellant to the charges and provided sufficient evidence that Ptlm. Turek had probable cause to issue an arrest. Thus, this portion of appellant's third assignment of error is not well-taken.
 {¶ 45} Cross-examination is generally "an expression in trial strategy." State v. Flors (1987), 38 Ohio App.3d 133. It is well-established under Ohio law that even a questionable trial strategy does not compel a finding of ineffective assistance of counsel. State v. Smith (2000), 89 Ohio St.3d 323, 328; Statev. Clayton (1980), 62 Ohio St.2d 45.
 {¶ 46} Our examination of the record fails to establish that appellant's trial counsel failed to adequately cross-examine Ptlm. Turek. The cross-examination of Ptlm. Turek was vigorous and competent. Trial counsel repeatedly questioned Ptlm. Turek with respect to discrepancies between his police report and testimony, and attacked Ptlm. Turek's credibility. As a result, trial counsel's cross-examination did not represent ineffective assistance, and this portion of appellant's third assignment of error is also not well-taken.
 {¶ 47} Appellant's third assignment of error is without merit.
 {¶ 48} Based upon the foregoing analysis, appellant's first, second, and third assignments of error are without merit. We hereby affirm appellant's convictions.
Ford, P.J., Grendell, J., concur.