OPINION
{¶ 1} Jaimie R. Wiley appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting legal custody of her minor son, Trent Wiley, to his father, Shawn M. Wiley. We affirm in part, reverse in part, and remand.
 {¶ 2} March 26, 2006, the Portage County Sheriffs Office ("PCSO") and Portage County Department of Job and Family Services ("PCDJFS") responded to a *Page 2 
report that seven-year old Trent Wiley had punctured a tire with a knife, then threatened his eleven-year old brother, Ronnie, and two other children. Ronnie denied the incident, which the other children confirmed. The Wiley boys' mother, Jaimie, evidently responded to questioning by stating that people around her trailer park habitually accused her children falsely. Eventually, the PCSO officers decided upon an emergency removal of Ronnie and Trent. Jaimie responded with various threats and insults.
 {¶ 3} This seems to have been an escalation of an on-going problem. Since the beginning of 2005, the PCSO has responded to numerous calls concerning the Wileys. Trent appears to have had problems with aggressive behavior at school; and, Jaimie had complained concerning his alleged mistreatment at school. The record indicates Jaimie has been uncooperative with attempts by authorities to help her and her children.
 {¶ 4} March 27, 2006, PCDJFS filed a complaint alleging Trent was a dependent and neglected child. March 28, 2006, a shelter care hearing was held; and, April 7, 2007, the magistrate filed his order that the parties stipulated there were reasonable grounds for taking the children into custody. Jaimie retained custody of the children under protective supervision of the PCDJFS, but Trent was placed with his father.
 {¶ 5} April 25, 2006, a case plan was filed with the trial court. That same day, adjudicatory hearing was held before the magistrate. May 5, 2006, the trial court adopted the decision of the magistrate, dismissing the charges of neglect, but finding that Jaime stipulated to a finding of dependency concerning her sons. The boys continued in her custody under interim protective supervision of the PCDJFS. *Page 3 
 {¶ 6} May 25, 2006, a revised case plan was filed with the trial court, and dispositional hearing was held before the magistrate. June 2, 2006, the trial court adopted the decision of the magistrate, placing the boys in Jaimie's legal custody, under the protective supervision of the PCDJFS. A further dispositional hearing was held September 12, 2006; and, September 18, 2006, the trial court adopted the magistrate's decision to continue the prior arrangement.
 {¶ 7} September 22, 2006, Shawn moved the trial court for custody of Trent. September 26, 2006, Jaime moved the trial court for legal custody of both her sons;[1] and, October 31, 2006, she moved to terminate the protective supervision of the PCDJFS.
 {¶ 8} The magistrate held hearing November 9, 2006. Testifying were Jaime, Shawn, Dr. Timothy Kohl, Ph.D., a psychologist retained by PCDJFS, and Shawna Bryant of PCDJFS. November 14, 2006, the magistrate filed his decision, which states:
 {¶ 9} "[m]other's personal and emotional issues interfere with her ability to meet Trent's needs, particularly regarding his behavioral and academic problems. Father has demonstrated his ability and willingness to work with service providers for Trent as well as his personal ability to be a safe and effective parent for Trent. Dr. Kohl's recommendation is that it is in Trent's best interest to be in father's custody. Father earns $24,880 per year. Mother earns $105 per week plus $186 per week from unemployment, for a total combined income for her of $15,136 per year. She has one other child." *Page 4 
 {¶ 10} Pursuant to the above, the magistrate recommended that Trent be placed in Shawn's legal custody; that Ronnie remain in the legal custody of Jaimie; and, that Jaimie's motion for termination of protective supervision by PCDJFS be denied.
 {¶ 11} Jaimie filed objections to the magistrate's decision. Hearing was held before the trial court January 26, 2007. That same day, the trial court overruled Jaimie's objections; and, ordered that Shawn should receive legal custody of Trent that evening. Jaimie timely noticed this appeal, assigning four errors:
 {¶ 12} "[1.] The trial court erred and abused its discretion in ordering a change of custody against the manifest weight of the evidence.
 {¶ 13} "[2.] Appellant Jaimie Wiley was denied a fair trial and denied her due process rights due to ineffective assistance of counsel.
 {¶ 14} "[3.] The trial court erred in admitting prejudicial hearsay testimony.
 {¶ 15} "[4.] The trial court erred to the prejudice of appellant and the minor child, Trent Wiley by proceeding to trial without Trent's appointed attorney, or his GAL report."
 {¶ 16} In reviewing a trial court's decision to adopt or reject a magistrate's decision, an appellate court looks for abuse of discretion.Hayes v. Hayes, 11th Dist. No. 2005-L-138, 2006-Ohio-6538, at ¶ 10. We also review a trial court's judgment in custody matters for abuse of discretion. In re Memic, 11th Dist. Nos. 2006-L-049, 2006-L-050, and 2006-L-051, 2006-Ohio-6346, at ¶ 25.
 {¶ 17} An abuse of discretion is no mere error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the *Page 5 
record, nor reason. See, e.g., State v. Ferranto (1925),112 Ohio St. 667, 676-678. Consequently, when a judgment "is supported by a substantial amount of competent and credible evidence," it may not be reversed. Hayes at ¶ 10.
 {¶ 18} By her first assignment of error, Jaime argues the judgment of the trial court is against the manifest weight of the evidence. Considerable evidence was introduced at the hearing before the magistrate that Jaime has trouble controlling her temper and emotions; and, that as a consequence, she has difficulty identifying Trent's behavioral and academic problems, or cooperating with authorities in trying to correct them. She counters there is no evidence her alleged difficulties compromise Trent's behavior, and that his school performance is adequate, and improving.
 {¶ 19} "When reviewing a trial court's decision on a manifest weight of the evidence basis, an appellate court is guided by the presumption that the findings of the trial court were correct. Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80 * * *; In re Williams, 10th Dist. Nos. 01AP-867 and 01AP-868, 2002-Ohio-2902, at ¶ 7. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures, and may use these observations in assessing the credibility of the testimony. Seasons Coal,10 Ohio St.3d at 80. Thus, judgments which are supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279 * * *, at syllabus." Memic at ¶ 21. (Parallel citations omitted.)
 {¶ 20} In this case, there was competent, credible evidence before the magistrate that Jaimie's emotional difficulties do adversely affect Trent's behavior, both from the *Page 6 
testimony of Dr. Kohl, who interviewed the principal actors in the course of performing a family reunification evaluation on behalf of PCDJFS, and from Ms. Bryant. Indeed, Dr. Kohl testified that the main difference between a custody evaluation, and the family reunification evaluation he made of the Wileys, is that he would include recommendations regarding custody and visitation in the former. He had no difficulty in opining it was in Trent's best interest to be in his father's legal custody.
 {¶ 21} Essentially, therefore, competent, credible evidence was presented to the magistrate that Trent's best interest would be served by entering his father's legal custody. However, this is insufficient as a matter of law to justify the subject change in legal custody.
 {¶ 22} Having issued its dispositional order granting Jaimie legal custody of Trent, the trial court retained jurisdiction over the boy. Cf. R.C. 2151.417(A) and (B). Consequently, it had power to consider and grant Shaun's motion to modify custody. R.C. 2151.353(E)(1) and (2); R.C. 2151.417(B). In doing so, it was required to comply with R.C.2151.42. R.C. 2151.417(B). R.C. 2151.42 requires the trial court, when modifying the legal custody of a child, to find both the modification in the child's best interest, R.C. 2151.42(A); and "that a change * * * in the circumstances of the child or the person who was granted legal custody" has occurred. R.C. 2151.42(B). See, generally, In reRosier-Lemmon/Rosier Children, 5th Dist. No 2003 CA 00306,2004-Ohio-1290, at ¶ 8-15.
 {¶ 23} In this case, neither the magistrate nor the trial court found any change in circumstances, justifying the modification of Trent's custody.
 {¶ 24} Consequently, the first assignment of error has merit. *Page 7 
 {¶ 25} Under her second assignment of error, Jaimie argues her trial counsel was ineffective, due to failure to subpoena any witness from Trent's school, to testify regarding his academic and behavioral progress. PCDJFS counters that Jaimie's counsel examined Trent's father, Shawn, regarding Trent's academic situation; and, that the evidence in the record, indicating a strong animus by Jaimie against her son's school, shows that any failure to call witnesses from the school was appropriate trial strategy.
 {¶ 26} The argument of PCDJFS is persuasive.
 {¶ 27} "`Both the Ohio Supreme Court and this court have adopted the (* * *) two-pronged test articulated in Strickland v. Washington (1984),466 U.S. 668 * * *, (* * *) to determinate whether an accused has received ineffective assistance of counsel:
 {¶ 28} "`"First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. (* * *) This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the `counsel' guaranteed by both the United States and Ohio Constitutions. (* * *)
 {¶ 29} "`"Second, a defendant must show that the deficient performance prejudiced his defense. (* * *) This requires a showing that there is `a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' (* * *) `A reasonable probability is a probability sufficient to undermine confidence in the outcome.' (* * *)" (Citations omitted.) State v. Swick (Dec. 21, 2001), 11th Dist. No. 97-L-254, (* * *) * * *, 2001 Ohio App. LEXIS 5857, at 4-5.'State v. Tripi, 11th Dist. Nos. 2005-L-030 and 2005-L-031,2006-Ohio-1687, at ¶ 37-39. * * *[.] *Page 8 
 {¶ 30} "In applying the Strickland test, courts must always recall that properly-licensed counsel is presumed competent, and that trial counsel must be afforded deference regarding trial strategy. In reRoque, 11th Dist. No. 2005-T-0138, 2006-Ohio-7007, at ¶ 11." State v.Willis, 11th Dist. Nos. 2006-L-057 and 2006-L-058, 2007-Ohio-583, at ¶ 14-17. (Parallel citations omitted.)
 {¶ 31} As PCDJFS notes, there is considerable evidence in the record concerning Jaimie's disputes with Trent's school authorities. Her counsel might well decide that their presence at the hearing would not advantage his client; and, that evidence of Trent's school performance should be adduced in another fashion.
 {¶ 32} The second assignment of error lacks merit.
 {¶ 33} By her third assignment of error, Jaimie argues the magistrate erred in allowing Dr. Kohl to opine regarding the effect of her alleged emotional problems on Trent's performance and behavior at school without requiring the admission of the school records, or the testimony of school officials.
 {¶ 34} We disagree. The admission of evidence is within the sound discretion of the trial court, and will not be disturbed on appeal absent abuse of discretion. Proctor v. N E Realty LLC, 11th Dist. No. 2005-T-0051, 2006-Ohio-3078, at ¶ 16. There is no question Dr. Kohl testified as an expert: consequently, the basis of the testimony he offered is governed by Evid.R. 703. That rule provides: "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." In this case, Dr. Kohl had interviewed Jaimie during his family reunification evaluation. He could base his *Page 9 
opinion regarding her ability to interact with school officials, and her effect on Trent's school behavior, upon his perceptions derived from that interview.
 {¶ 35} The third assignment of error lacks merit.
 {¶ 36} By her fourth assignment of error, Jaimie argues it was error for the magistrate to proceed to hearing without the presence, or a report from, Trent's guardian ad litem. The guardian ad litem had previously recommended Jaimie retain legal custody of Trent. When the guardian attempted to report at the hearing on objections, the trial court refused.
 {¶ 37} In view of our disposition of the first assignment of error, we find this assignment moot.
 {¶ 38} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and this matter remanded for further proceedings consistent with this opinion.
CYNTHIA WESTCOTT RICE, P.J., concurs,
TIMOTHY P. CANNON, J., dissents with Dissenting Opinion.
[1] This motion was orally withdrawn by her counsel at the hearing before the magistrate, as Jaimie already had custody.