OPINION
{¶ 1} Appellant, David M. Tuttle ("Tuttle"), appeals the November 15, 2005 judgment entry of the Willoughby Municipal Court denying his motion to suppress.
 {¶ 2} On September 17, 2005, Tuttle was issued five citations for violations of Willoughby Ordinances ("WO") as follows: operating a vehicle while under the influence of alcohol or drug abuse ("OVI"), in violation of WO 434.01(A)(1); operating a vehicle with a prohibited concentration of breath alcohol; in violation of WO 434.01(A)(8); driving while under suspension, in violation of WO 436.07(A); operating a vehicle with no operator's license; in violation of WO 436.01(A)(1), all misdemeanors of the first degree; and driving left of center, in violation of WO 432.06(A), a minor misdemeanor. On October 13, 2005, Tuttle filed a motion to suppress evidence based upon a lack of probable cause for the OVI arrest.
 {¶ 3} At the hearing on the motion to suppress, Lieutenant Jack Poshe ("Officer Poshe"), of the Willoughby Police Department, testified as follows: at approximately 3:30 a.m. on September 17, 2005, he was on duty and driving westbound, behind a minivan, on Pelton Road in Willoughby. A vehicle driven by Tuttle made a wide left turn onto Pelton Road from Lost Nation Road, crossing over onto the lane occupied by the minivan. The minivan was forced to brake suddenly in order to avoid the vehicle driven by Tuttle. Officer Poshe turned around and followed Tuttle's car traveling eastbound on Pelton Road. Tuttle's car went left of center, and then Tuttle drove off the road onto the right of way. Officer Poshe activated his overhead lights to perform a traffic stop. Tuttle pulled over to a stop in the parking lot of the Willoughby Shredder Plant. Tuttle exited his vehicle, almost fell down, stumbled and fell back on the car. Officer Poshe then approached Tuttle and observed that Tuttle smelled heavily of alcohol and had glassy eyes. Officer Poshe further observed that Tuttle's head was swaying and that Tuttle showed problems focusing, had signs of slurred speech, and admitted that he had been at a bar. Officer Poshe did not perform field sobriety testing. He arrested Tuttle for operating a vehicle while under the influence of alcohol. About ten minutes later, two additional police officers arrived at the scene.
 {¶ 4} After booking, Tuttle was tested for Breath Alcohol Content ("BAC"), and was charged with prohibited BAC, when the results indicated a reading of .292.
 {¶ 5} On November 15, 2005, the trial court denied Tuttle's motion to suppress.[1] In its judgment entry, the court found that Officer Poshe's "specific personal observations" of Tuttle supported a finding of "probable cause to arrest * * * without the field sobriety test results." It is from that judgment that Tuttle filed a timely appeal raising the following assignments of error:
 {¶ 6} "[1.] The officer lacked probable cause to make a warrantless arrest of the defendant-appellant.
 {¶ 7} "[2.] The trial court erred in denying defendant-appellant's motion to suppress as the totality of the circumstance does not warrant his arrest when the lieutenant failed to conduct field sobriety tests.
 {¶ 8} "[3.] The trial court erred in denying defendant-appellant's motion to suppress because there were not exigent circumstances wherefore the field sobriety tests could not be performed."
 {¶ 9} We shall address Tuttle's assignments of error together as they relate to the court's denial of Tuttle's motion to suppress based upon probable cause to arrest in the absence of field sobriety testing.
 {¶ 10} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288. On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank (2002), 11th Dist. No. 2001-L-054, 2002-Ohio-1337.
 {¶ 11} In the case sub judice, Tuttle does not argue that the initial traffic stop was not justified based upon Officer Poshe's observations. Rather, Tuttle specifically asserts that Officer Poshe lacked reasonable suspicion to justify the investigative stop, beyond that for a traffic violation.
 {¶ 12} The Fourth Amendment of the United States Constitution, as well as Article One, Section Fourteen, of the Ohio Constitution, guarantees "`the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' When a police officer stops an automobile and detains its occupants, a `seizure' is committed within the meaning of the Fourth andFourteenth Amendments of the United States Constitution." Statev. Wojtaszek, 11th Dist. No. 2002-L-016, 2003-Ohio-2105, at ¶ 15, citing Delaware v. Prouse (1979), 440 U.S. 648, paragraph two of the syllabus. "It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law." State v. Boczar, 11th Dist. No. 2004-A-0063, 2005 Ohio 6910, at ¶ 11, citing Dayton v.Erickson, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431. Moreover, this court has repeatedly held that when a police officer witnesses a traffic violation, he or she is warranted in making a stop to issue a citation. Village of Waite Hill v. Popovich, 11th Dist. No. 2001-L-227, 2003-Ohio-1587, at ¶ 14. However, because any further detention is a greater invasion into an individual's liberty interests, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. State v. Evans (1998),127 Ohio App.3d 56, 62, citing State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361. A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. Popovich, supra, at ¶ 11; State v. Dye, 11th Dist. No. 2001-P-0140, 2002-Ohio-7158, at ¶ 18.
 {¶ 13} Here, the trial court relied on Officer Poshe's testimony, and found that in the operation of his vehicle, Tuttle made a turn that "crossed over onto the land operated by the minivan," subsequently "went left of center," and then "went off the right of way." These facts support a finding that Tuttle committed traffic violations and that Officer Poshe possessed probable cause to stop the vehicle.
 {¶ 14} These facts are further sufficient for a finding that Officer Poshe possessed a reasonable, articulate suspicion that Tuttle's driving was impaired. Further, Officer Poshe testified that upon the stop, Tuttle immediately got out of his car, on his own, almost fell, and stumbled. Tuttle argues that his stumbling did not provide additional facts upon which Officer Poshe could rely for an investigative stop, because a reasonable person could have assumed that given the early morning time of the stop, Tuttle may have only been extremely tired. We disagree.
 {¶ 15} Based upon the totality of the circumstances, including the time of the incident, Tuttle's erratic driving, and his actions of stumbling and falling, Officer Poshe possessed a reasonable, articulate suspicion on which to conduct a further investigatory stop, on the basis that Tuttle was committing or about to commit a crime, namely driving while under the influence of alcohol.
 {¶ 16} Next, Tuttle argues that the state failed to prove probable cause for his OVI arrest.
 {¶ 17} In determining if a police officer had probable cause to arrest an individual for driving under the influence, a court must consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio (1964), 379 U.S. 89, 91; State v.Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212. To make this determination, a court must examine the totality of facts and circumstances surrounding the arrest. Homan at 427.
 {¶ 18} Tuttle first argues that Officer Poshe was required to administer the field sobriety test before his arrest, pursuant to this court's holding in Wickliffe v. Gutauckas (1992),79 Ohio App.3d 224.
 {¶ 19} We do not construe our holding in Gutauckas as standing for the proposition that where, based on all the information available to the officer, a police officer has probable cause to believe that an individual is guilty of OVI, he is required to conduct field sobriety tests before he may arrest the individual.
 {¶ 20} In the Gutauckas decision, we held that there was no probable cause to arrest where no erratic driving was observed, and no field sobriety tests were performed before the arrest. Unlike the case at bar, in Gutauckas, the unlawful arrest was based solely upon an observation that the defendant was intoxicated one hour before the stop and the smell of alcohol at the time of the stop.
 {¶ 21} Tuttle next argues that based upon the Supreme Court's ruling in Homan, field sobriety tests must be administered in strict compliance with standardized procedures, and that probable cause (absent exigent circumstances) must be based on a suspect's performance on one or more of these tests. In his argument, Tuttle suggests that the failure of the officers to perform field sobriety testing, amounts to an improper attempt to circumvent the strict compliance holding of the Homan Court. Tuttle's argument is unpersuasive for two reasons.
 {¶ 22} First, Tuttle incorrectly sets forth the test to be applied in cases where field sobriety testing is conducted. R.C.4511.19(D)(4)(b) effectively superseded Homan for offenses committed after April 9, 2003 and established a "substantial compliance" standard for the admissibility of field sobriety tests for purposes of probable cause to arrest. State v. Cross,
11th Dist. Nos. 2005-L-030 and 2005-L-031, 2006-Ohio-1679, at ¶22; State v. Miracle, 12th Dist. Nos. CA2003-11-275 and CA2003-11-283, 2004-Ohio-7137, at ¶ 18.
 {¶ 23} Further, relevant to this appeal, the Homan Court stated, "* * * probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on * * * these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered * * * [.]"
 {¶ 24} Thus, probable cause is not lacking simply because Officer Poshe, or the other responding officers, failed to perform field sobriety tests.
 {¶ 25} We now address whether the totality of the facts and circumstances, other than field sobriety test results, supports a finding of probable cause for this arrest pursuant to Beck andHoman.
 {¶ 26} Between the initial stop and the decision to arrest Tuttle, Officer Poshe testified that he observed the following facts. "Tuttle exited the car before [Officer Poshe] even got his own car door open. [Tuttle] almost fell down, grabbed onto the door, finally righted himself, * * * started stumbling around and fell back onto the car[.]" Officer Poshe observed a "heavy odor" of alcohol, and that Tuttle's eyes were "extremely glassy" and his head was "swaying * * * [.]" Officer Poshe further testified that Tuttle had a "problem focusing on [Officer Poshe]." When Officer Poshe asked Tuttle "what he was doing," Tuttle responded that he had been at a bar and exhibited slurred speech. Officer Poshe further testified that he helped hold Tuttle in an upright position because he "was afraid that [Tuttle] was going to fall down." At that time, Officer Poshe placed Tuttle under arrest for driving under the influence.
 {¶ 27} This court has consistently held that a police officer's observations of a strong odor of alcohol, bloodshot and glassy eyes, and slurred speech can form the basis of probable cause to arrest for DUI. State v. Tripi, 11th Dist. Nos. 2005-L-030 and 2005-L-131, 2006-Ohio-1687, at ¶ 24, citing,State v. Hancock, 11th Dist. No. 2004-A-0046, 2005-Ohio 4478, at ¶ 17; State v. Rendina, 11th Dist. No. 98-L-129, 1999 Ohio App. LEXIS 6269, at 16-17.
 {¶ 28} We conclude that based upon the totality of the circumstances, at the moment of Tuttle's arrest, Officer Poshe had reasonable grounds to believe that Tuttle had been driving under the influence.
 {¶ 29} Accordingly, appellant's first, second, and third assignments of error are without merit and the judgment of the Willoughby Municipal Court is affirmed.
William M. O'Neill, J., Diane V. Grendell, J., concur.
[1] Tuttle subsequently changed his plea from not guilty to no contest on all charges. The trial court found Tuttle guilty of all charges and imposed sentence. Tuttle's sentence has been stayed pending appeal.