OPINION
{¶ 1} Appellant, Chad S. Kock, appeals the judgment of the Mentor Municipal Court, denying his motion to suppress evidence, following which he pleaded no contest and was convicted for operating a vehicle under the influence of alcohol. At issue is whether the police had reasonable suspicion to stop and probable cause to arrest him. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On February 13, 2008, appellant was charged in the Mentor Municipal Court with operating a vehicle under the influence of alcohol ("OVI") and operating a vehicle with a prohibited concentration of alcohol in his blood ("BAC"), misdemeanors of the first degree, in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(d), respectively.
 {¶ 3} Appellant entered a not guilty plea and filed a motion to suppress, arguing the police did not have reasonable suspicion to stop him and subsequently arrested him without probable cause.
 {¶ 4} The trial court held a suppression hearing on April 2, 2008. Scott Daubenmire, patrol officer with the Mentor-on-the-Lake Police Department, testified he successfully completed his training in alcohol detection, apprehension and prevention at the police academy in 2002, and has held his current position for six years.
 {¶ 5} On Saturday morning, February 9, 2008, at about 3:13 a.m., Officer Daubenmire was on duty in his marked police cruiser. While patrolling the parking lot of Normandy Manor Apartments on Andrews Road, he saw a Honda automobile "sitting" in the driveway of the parking lot in front of the "G" Building with appellant in the driver's seat.
 {¶ 6} The officer pulled up next to appellant and both of them lowered their windows. The officer asked him, "what are you doing here?" Appellant said, "I'm waiting for a female to come out." The officer said appellant was having trouble focusing on him. By this he meant that, instead of looking at the officer when talking to him, it appeared that appellant was looking behind the officer. Also, while appellant was talking, his head was moving back and forth and was not steady. The officer testified that, based on his training and experience, these are signs of impairment. He said this *Page 3 
gave him a reasonable suspicion to investigate whether appellant was operating his vehicle while impaired. As a result, the officer told appellant, "wait a minute, I'll come around and talk to you." Appellant then drove his car forward into a parking space.
 {¶ 7} As the officer started to drive his cruiser behind appellant's car, the officer's dispatcher radioed to him, "we have a disturbance at Normandy Manor and it was a vehicle in the parking lot in front of G Building that was beeping its horn." The officer said this was the exact location where he found appellant. The officer said that while there were other cars parked in parking spaces, appellant's vehicle was the only vehicle in the parking lot with a driver in it.
 {¶ 8} Officer Daubenmire then walked over to appellant's vehicle. He asked for appellant's driver's license and proof of insurance, and appellant handed them to the officer. At that point the officer smelled a "moderate odor" of alcohol coming from appellant. The officer asked appellant if he would perform "some in-the-car field sobriety tests" and appellant said he "would rather not." The officer then asked appellant to exit his vehicle and appellant complied.
 {¶ 9} The officer asked appellant to recite the alphabet from "F" to "P," and appellant recited it from "F" to "Z." The officer testified that, from his training, the fact that appellant could not follow his instructions was a "cue" that he was impaired. The officer then asked appellant to count backwards from "62" to "38," and appellant counted from "61" to "34." The officer said this failure was another cue of appellant's impairment. The officer conceded these tests are not standardized field sobriety tests, but said they were suggested by the instructor at the police academy, who taught the officers that if a defendant cannot follow these instructions, it is a cue of intoxication. *Page 4 
 {¶ 10} At that point the officer asked appellant if he would submit to field sobriety tests. Appellant asked him, "what is it?" The officer said they were designed to show cues of his level of intoxication. Appellant then asked, "what is that?" The officer asked again if he would submit to these tests, and appellant said, "I don't know what it is." The officer explained them again and asked appellant if he would perform them. Appellant again asked, "what is it?" The officer then arrested him. Appellant subsequently took a breathalyzer test at the station and his test result was .13, well over the legal limit.
 {¶ 11} The trial court orally announced its findings from the bench. The court found that, because the stop occurred in the middle of an apartment parking lot at 3:00 a.m., the officer was authorized to approach appellant's vehicle. Further, based on appellant's difficulty in focusing, the court found the officer was justified in investigating.
 {¶ 12} The court found the radio dispatch about the vehicle causing a disturbance also formed part of the officer's reason to investigate. Then, while talking to appellant, the officer smelled a moderate odor of alcohol. The officer asked appellant to perform in-the-car field sobriety tests and appellant refused. The officer then asked appellant to take the alphabet and numbers test and appellant voluntarily complied. The court found appellant's failure to follow the officer's instructions on these tests provided signs that he was impaired. The officer then asked appellant to take the field sobriety tests, and appellant's repeated questions constituted a refusal to submit to them. The court found that at that moment, the officer had probable cause to arrest appellant and denied his motion to suppress. *Page 5 
 {¶ 13} Following the hearing, appellant pleaded no contest to OVI and the court dismissed the BAC charge. Appellant was sentenced to 90 days in jail with 85 days suspended. The court ordered the sentence to be served as a 72-hour alcohol training course and two days of community service. The court also terminated appellant's administrative license suspension and gave appellant driving privileges after 30 days, which had already elapsed. The court also stayed the execution of sentence pending appeal.
 {¶ 14} Appellant timely appeals his conviction. For his sole assignment of error, appellant asserts:
 {¶ 15} "THE TRIAL COURT ERRED BY DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS IN VIOLATION OF HIS DUE PROCESS RIGHTS AND RIGHTS AGAINST UNREASONABLE SEARCH AND SEIZURE AS GUARANTEED BY THE FOURTH,FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 14, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 16} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Burnside, 100 Ohio St.3d 152, 154, 2003-Ohio-5372. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. Accepting these facts as true, the *Page 6 
appellate court independently reviews the trial court's legal determinations de novo. State v. Djisheff, 11th Dist. No. 2005-T-0001,2006-Ohio-6201, at ¶ 19.
 {¶ 17} Contact between the police and citizens falls within one of three categories: (1) a consensual encounter; (2) a brief detention pursuant to Terry v. Ohio (1968), 392 U.S. 1; and (3) an arrest.Willowick v. Sable (Dec. 12, 1997), 11th Dist. No. 96-L-189, 1997 Ohio App. LEXIS 5562, *8-*9. Under the first category, an officer may approach an individual in a street or other public place for the purposes of a consensual encounter. A consensual encounter is not a seizure, and, as a result, no Fourth Amendment rights are implicated.Florida v. Bostick (1991), 501 U.S. 429, 434. The individual must feel free to terminate the consensual encounter or decline the officer's request. Id. at 439. Police may approach an individual, engage in conversation, and request identification, all under the purview of a consensual encounter. Id. at 434-435.
 {¶ 18} Under the second category, "* * * the concept of an investigative stop allows a police officer to stop an individual for a short period if the officer has a reasonable suspicion that criminal activity has occurred or is about to occur." State v. McDonald (Aug. 27, 1993), 11th Dist. No. 91-T-4640, 1993 Ohio App. LEXIS 4152, *10. Police may briefly detain an individual where a police officer observes unusual conduct, which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. Terry, supra, at 21. "In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a man of reasonable caution in the belief that the action taken was appropriate." State v.Klein (1991), 73 Ohio App.3d 486, 488, citing Terry, supra, at 19-20. "[T]he stop and inquiry must be `reasonably related in scope to the justification for their initiation.'" United *Page 7 States v. Brignoni-Ponce (1975), 422 U.S. 873, 881, citingTerry, at 29. "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty (1984), 468 U.S. 420, 439.
 {¶ 19} Since the determination of whether an officer had reasonable suspicion depends on the specific facts of the case, the Ohio Supreme Court has consistently held the propriety of such a stop "must be viewed in light of the totality of the surrounding circumstances." State v.Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
 {¶ 20} The third category of police-citizen encounter occurs when an officer has probable cause to arrest. "Probable cause for a warrantless arrest exists when the arresting officer has within his knowledge facts and circumstances that amount to reasonable and trustworthy information sufficient to warrant a prudent [person] in believing that a crime or offense had been or is being committed and that the person to be arrested is the probable offender." State v. Kobi (1997),122 Ohio App.3d 160, 169, citing, Beck v. Ohio (1964), 379 U.S. 89. Probable cause is a flexible, common sense standard dealing with probabilities, not certainties. Texas v. Brown (1983), 460 U.S. 730, 735; Brinegar v.United States (1949), 338 U.S. 160, 175. In determining whether an officer has probable cause, a reviewing court must analyze the totality of the circumstances. State v. Brown, 11th Dist. No. 2006-L-040,2007-Ohio-464, at ¶ 22.
 {¶ 21} As the first issue under his assigned error, appellant argues the police did not have a reasonable suspicion based on articulable facts to stop him when the officer first saw appellant sitting in his vehicle in the middle of the apartment parking lot. *Page 8 
However, when the officer first approached appellant, this was for the purpose of a consensual encounter. Sable, supra. Officer Daubenmire observed appellant at 3:00 a.m. in his vehicle sitting in the middle of the parking lot for no apparent reason. The officer simply approached appellant to ask him what he was doing. Appellant was free to answer or not, and nothing the officer did or said would have suggested to appellant that he was not free to leave. Thus, there was nothing inappropriate or unlawful in that initial encounter. See, State v.Phipps, 11th Dist. No. 2006-P-0098, 2007-Ohio-3842.
 {¶ 22} Further, during the encounter, appellant was obviously having trouble focusing while talking to the officer. Also, his head was constantly moving back and forth and he was unable to keep his head steady. The officer testified that, based on his training and experience, this conduct provided signs that appellant was impaired and gave him reasonable suspicion to investigate whether he was operating his vehicle while impaired. As a result, he told appellant to wait as he was going to park behind him and come around to talk to him. The state concedes in its brief that at that point, the initial consensual encounter became a stop for the purpose of conducting a "limited investigation." It also argues the message from the dispatcher concerning a complaint of a vehicle beeping its horn at the area where the officer found appellant provided additional facts that justified the stop.
 {¶ 23} We must therefore determine whether Officer Daubenmire had sufficient articulable facts to stop appellant to investigate. From our review of the record, the officer had authority to stop appellant to investigate because: (1) the officer found him in the apartment parking lot on a Friday night at 3:00 a.m.; (2) when the officer approached appellant, he was having difficulty focusing and his head was not steady, *Page 9 
which the officer testified were signs of impairment; and (3) the officer had received a report of someone causing a disturbance by beeping his horn in the area where appellant was found and he was the only person there.
 {¶ 24} We note that in Willoughby v. Tuttle, 11th Dist. No. 2005-L-216, 2006-Ohio-4170, this court considered a traffic stop in which the defendant was having difficulty in focusing and his head was unsteady. This Court held:
 {¶ 25} "Between the initial stop and the decision to arrest Tuttle, Officer Poshe testified that he observed the following facts[:] Tuttle exited the car before [Officer Poshe] even got his own car door open. [Tuttle] almost fell down, grabbed onto the door, finally righted himself, * * * started stumbling around and fell back onto the car[.]' Officer Poshe observed a `heavy odor' of alcohol, and that Tuttle's eyes were `extremely glassy' and his head was `swaying * * * [.]' Officer Poshe further testified that Tuttle had a `problem focusing on [OfficerPoshe].' When Officer Poshe asked Tuttle `what he was doing,' Tuttle responded that he had been at a bar and exhibited slurred speech. Officer Poshe further testified that he helped hold Tuttle in an upright position because he `was afraid that [Tuttle] was going to fall down.' At that time, Officer Poshe placed Tuttle under arrest for driving under the influence.
 {¶ 26} "* * *
 {¶ 27} "We conclude that based upon the totality of the circumstances, at the moment of Tuttle's arrest, Officer Poshe had reasonable grounds to believe that Tuttle had been driving under the influence." (Emphasis added.) Tuttle at ¶ 26-28.
 {¶ 28} This court in Tuttle thus impliedly held that trouble in focusing and an unsteady head are signs of impairment, which may be considered with other signs, *Page 10 
such as an odor of alcohol, bloodshot and glassy eyes, and slurred speech, when determining whether an officer has probable cause to arrest for OVI.
 {¶ 29} Further, Officer Daubenmire testified that, based on his police training, difficulty in focusing and the inability to keep one's head steady are signs of impairment. Further, it was reasonable for the officer to conclude appellant was the person beeping his horn based on appellant's location and his statement that he was waiting for a female. Thus, there was competent, credible evidence to support the trial court's finding that the officer was authorized in stopping appellant to investigate the officer's reasonable suspicion that appellant was OVI.
 {¶ 30} For his second issue, appellant argues Officer Daubenmire did not have sufficient, articulable facts to authorize him to detain appellant for purposes of administering field sobriety tests. A request that a driver perform field sobriety tests constitutes a greater invasion of liberty than the initial stop, and "must be separately justified by specific, articulable facts showing a reasonable basis for the request." State v. Evans (1998), 127 Ohio App.3d 56, 62, citingState v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361. Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances.Evans, supra, at 63; see, also, State v. Reed, 7th Dist. No. 05 BE 31,2006-Ohio-7075, at ¶ 9.
 {¶ 31} In Evans, this court set forth a non-exclusive list of factors to be considered when determining whether a police officer has a reasonable suspicion of intoxication justifying the administration of field sobriety tests. That list, on which no one factor is dispositive, consists of the following: *Page 11 
 {¶ 32} "(1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer (`very strong,' `strong,' `moderate,' `slight,' etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." Id. at f.n. 2.
 {¶ 33} In State v. Brickman (June 8, 2001), 11th Dist. No. 2000-P-0058, 2001 Ohio App. LEXIS 2575, this court noted that "[c]ourts generally approve an officer's decision to conduct field sobriety tests when the officer's decision was based on a number of factors [set forth in Evans, supra]." Brickman at *8, citing Evans, supra, at 63.
 {¶ 34} A similar sentiment was expressed by the Second Appellate District in State v. Downing, 2d Dist. No. 2001-CA-78, 2002-Ohio-1302. The court held the smell of alcohol and glassy eyes at a late hour, without more, is not sufficient to conduct field *Page 12 
sobriety tests. However, "the additional element of erratic driving or specifically a `strong' odor of alcohol seem to tip the scales in favor of allowing the tests." Id. at ¶ 10.
 {¶ 35} In Kirtland Hills v. Strogin, 11th Dist. No. 2005-L-073,2006-Ohio-1450, the officer stopped the defendant for a license plate illumination violation on a Friday night at 3:17 a.m. The officer smelled a strong odor of alcohol coming from the defendant, who admitted he was coming from a bar where he had consumed a couple of beers. The officer asked the defendant to recite the alphabet, but he was only able to make it to "S" before he started to slur, mix up and mumble the rest of the alphabet. This court held that these factors would be sufficient to establish reasonable suspicion to request the defendant to submit to field sobriety testing. Id. at ¶ 20-21.
 {¶ 36} Further, in State v. Menking, 4th Dist. No. 02CA66, 2003-Ohio-3515, the officer observed the defendant driving her car at 2:30 a.m. with an expired registration sticker on the license plate. After stopping the defendant, she cooperated with the officer. She exhibited no coordination problems. There was no evidence of bloodshot eyes or slurred speech. The officer noticed a "moderate" odor of alcohol. He administered the alphabet test, which, while authorized by the National Highway Transportation Safety Administration manual, is not a standardized field sobriety test. He instructed the defendant to recite the alphabet, but she was only able to recite it through "T." The court held:
 {¶ 37} "The totality of circumstances in this case include the time of day, the moderate odor of alcohol on Menking's breath, Menking's admission to consuming four beers, Menking's inability to keep her balance and correctly or completely recite the alphabet, and the positive result from the portable breath test. We find that these facts *Page 13 
and circumstances constitute some competent, credible evidence that Officer Williams had sufficient information, derived from a reasonably trustworthy source, which could cause a prudent person to believe that Menking was driving while under the influence of alcohol.
 {¶ 38} "In conclusion, the trial court did not err in denying Menking's motion to suppress. The court properly considered evidence regarding Menking's performance on the alphabet test, and the record contains some competent, credible evidence supporting the court's conclusion that Officer Williams had probable cause to arrest Menking." Id. at ¶ 16-17.
 {¶ 39} Application of the Evans factors to this case indicates that Officer Daubenmire's decision to conduct field sobriety tests was justified by specific, articulable facts showing a reasonable basis for the request. Here, several factors set forth in Evans are present: (1) the time and day of the stop (the stop occurred at 3:13 a.m. on a Friday night); (2) the odor of alcohol coming from the interior of the car, or more significantly, on the suspect's person or breath (Officer Daubenmire testified an odor of alcohol was coming from appellant); (3) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.) (the officer characterized the intensity of the odor of alcohol as "moderate"); and (4) the condition of the suspect's eyes (appellant was having trouble focusing). We also note that Officer Daubenmire testified that, based on his training and experience, appellant's failure to follow his instructions on the alphabet and numbers tests were signs of impairment.
 {¶ 40} Appellant's actions with respect to the factors noted above, together with the officer's experience and training, demonstrate that the officer had reasonable *Page 14 
suspicion to detain appellant further after the initial stop to conduct field sobriety tests. Thus, there was competent, credible evidence to support the trial court's finding that Officer Daubenmire had reasonable suspicion to administer the field sobriety tests.
 {¶ 41} Under appellant's third issue, he argues that the only evidence to which the officer could point to support probable cause to arrest was appellant's difficulty in focusing. Of course, as noted supra, the officer was also entitled to consider the day and time of the stop and the fact that appellant's head was unsteady, moving back and forth while he was talking to the officer. Further, the officer received a report that someone at appellant's location was causing a disturbance by beeping his horn. Moreover, appellant was unable to follow the officer's instructions relative to the alphabet and numbers tests. Finally, appellant refused to take the field sobriety tests, although the officer was justified in administering them. A "refusal to submit to field sobriety tests is another factor that may be considered in determining probable cause in an arrest for driving under the influence of alcohol."State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, at ¶ 19. There was competent, credible evidence to support the trial court's finding that the officer had probable cause to arrest appellant.
 {¶ 42} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Mentor Municipal Court is affirmed.
 DIANE V. GRENDELL, P.J., MARY JANE TRAPP, J., concur. *Page 1