[Cite as *State v. Mullen* , 2018-Ohio-5188.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0018** |
| NATASHA M. MULLEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 2017 CRB 01131.

Judgment: Reversed and remanded.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Jane Timonere*, Timonere Law Offices, L.L.C., 4 Lawyers Row, Jefferson, OH 44047-1099 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Natasha M. Mullen, appeals from the January 8, 2018 judgment entry of the Ashtabula Municipal Court. Appellant takes issue with the trial court's denial of her motion to suppress. For the following reasons, the trial court's judgment is reversed, and this matter is remanded to the trial court for further proceedings.

{¶2} On July 10, 2017, a complaint was filed in the Ashtabula Municipal Court, charging appellant with possession of drug paraphernalia, a fourth-degree misdemeanor

in violation of R.C. 2925.14(C)(1), and possession of drugs, a minor misdemeanor in violation of R.C. 2925.11(A).  Appellant entered a plea of not guilty.

{¶3}   On August 21, 2017, appellant filed a motion to suppress evidence.  Appellant argued that all the evidence obtained by the state must be suppressed because it was gathered in violation of appellant's constitutional rights.  A hearing was held on October 20, 2017, at which Deputy Brian Sterrick testified.

{¶4}   The trial court denied the motion to suppress on October 30, 2017.

{¶5}   Appellant entered a plea of no contest.  She was found guilty and ordered to pay a fine of $150.00 on each count of the complaint in addition to court costs.  The trial court granted a stay of the sentence pending appeal.  The trial court's judgment entry was filed on January 8, 2018.

{¶6}   Appellant noticed a timely appeal.  She raises one assignment of error:

{¶7}   "The trial court erred in overruling the motion to suppress.  The officer conducted an illegal detention and search of Ms. Mullen, the fruits of which must be excluded from evidence."

{¶8}   "Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982).  "[T]he appellate court must then independently determine, without deference to the conclusion of the trial court,

whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

{¶9} The following findings were made by the trial court and are supported by competent credible evidence.

{¶10} Deputy Brian Sterrick was on duty on July 1, 2017. Deputy Sterrick was aware that Jeffery Stanley of 4506 Ninevah Road, Saybrook Township had a warrant out for his arrest pursuant to an indictment on several "serious" felony charges. Deputy Sterrick drove by Stanley's residence and noticed Stanley's vehicle idling in the driveway with the driver's door open. Deputy Sterrick ordered Stanley out of the vehicle, arrested him, and placed him in the back of his police cruiser.

{¶11} Deputy Sterrick saw a female passenger, later identified as appellant, in the vehicle. He approached appellant because he was aware there was a protection order against Stanley which protected a female victim, and he wanted to investigate the situation. Further, Deputy Sterrick felt obligated to secure the situation after arresting Stanley because the car was still running, the house was unlocked, and the dogs were running around in the yard. The deputy asked appellant for her identification and confirmed that she was not the victim of the protection order against Stanley.

{¶12} He further asked appellant whether she had any illegal drugs in the car or on her person. Appellant "had answered that not that she was aware of," which raised Deputy Sterrick's suspicion. He explained that in his over 17 years of law enforcement experience and training, the response given by appellant is the most common response given by a person in possession of illegal drugs. Deputy Sterrick also explained that

3

people involved in violent crimes are typically involved with drugs and associate with others involved with drugs.

{¶13} Deputy Sterrick then told appellant that he was a canine officer and had a drug detection dog he would use to search the vehicle, and if contraband was found, appellant would be charged with falsification in addition to possession. At this point, appellant grabbed her purse, pulled out a cigar filled with marijuana, and handed the cigar to the deputy. Deputy Sterrick asked for appellant's purse, and she handed it to him. He searched the purse and located two additional cigars filled with marijuana, a pill bottle filled with marijuana roaches, and a grinder.

{¶14} Appellant was never placed under arrest or issued a citation. Due to time constraints, the report was forwarded to the solicitor's office for charges.

{¶15} Appellant argues that Deputy Sterrick's interaction with her was an investigative detention because a reasonable person under the same surrounding circumstances would not have believed she was free to leave. Appellant contends the detention was illegal because Deputy Sterrick's suspicion that appellant was in possession of drugs was not based on specific, articulable facts. Appellant maintains the detention and search of her purse violated her constitutional right to be free from unreasonable searches and seizures, and any evidence obtained after her illegal detention must be suppressed.

{¶16} "'While the Fourth Amendment of the U.S. Constitution does not explicitly state that the violation of its provisions against unlawful search and seizure will result in suppression of the evidence obtained as a result of the violation, the U.S. Supreme Court held that the exclusion of evidence is an essential part of the Fourth Amendment.'" *State*

4

*v. Eggleston*, 11th Dist. Trumbull No. 2014-T-0068, 2015-Ohio-958, ¶17, quoting *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶29, citing *Weeks v. United States*, 232 U.S. 383, 394 (1914) (overruled) and *Mapp v. Ohio*, 367 U.S. 643, 649 (1961).  "'The primary purpose of the exclusionary rule is to remove incentive from the police to violate the Fourth Amendment.'" *Id.*, quoting *Casey*, *supra*, at ¶29.

{¶17}  The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  The language of Article I, Section 14 of the Ohio Constitution is nearly identical, and it has been interpreted by the Ohio Supreme Court as affording the same protection as the Fourth Amendment.  *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶11, citing *State v. Robinette*, 80 Ohio St.3d 234, 238-239 (1997).

{¶18}  Under the Fourth Amendment, searches and seizures conducted without a warrant based on probable cause are unreasonable unless the search falls within an exception to this requirement.  *Katz v. United States*, 389 U.S. 347, 357 (1967).  There are three general categories in which encounters between police officers and citizens are classified:

> (1) a consensual encounter, which requires no objective justification, [*see Florida v. Bostick*, 501 U.S. 429, 434 (1991)], (2) a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity, [*see Terry v. Ohio*, 392 U.S. 1, 30 (1968)], and (3) a full-scale arrest, which must be supported by probable cause, [*see Brown v. Illinois*, 422 U.S. 590 (1975)].

*State v. Jones*, 10th Dist. Franklin No. 09AP-1053, 2010-Ohio-2854, ¶13; *see also State v. Trevarthen*, 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶12, citing *Terry*, *supra*, at 30 and *State v. Long*, 127 Ohio App.3d 328, 333 (4th Dist.1998).

{¶19} "The hallmark of a consensual encounter is that a reasonable citizen must feel 'free to decline the officers' requests or otherwise terminate the encounter.'" *State v. Barth*, 11th Dist. Lake No. 99-L-058, 2000 WL 714406, *2 (June 2, 2000), quoting *Bostick*, *supra*, at 430. "'A consensual encounter is not a seizure, therefore no Fourth Amendment rights are invoked.'" *Trevarthen*, *supra*, at ¶14, quoting *State v. Ball*, 11th Dist. Trumbull No. 2009-T-0013, 2010-Ohio-714, ¶14, citing *Bostick*, *supra*, at 434.

{¶20} "'It is well-settled that "[a]n encounter may be consensual when a police officer approaches and questions individuals in or near a parked car."'" *Id.* at ¶13, quoting *Ball*, *supra*, at ¶12, quoting *State v. Staten*, 4th Dist. Athens No. 03CA1, 2003-Ohio-4592, ¶18. Police may also request identification within the scope of a consensual encounter. *Id.*, citing *State v. Kock*, 11th Dist. Lake No. 2008-L-067, 2008-Ohio-5859, ¶17, citing *Bostick*, *supra*, at 434.

{¶21} An investigatory stop constitutes a seizure for Fourth Amendment purposes. *Terry*, *supra*, at 16. "An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶35, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981). "[A]n objective and particularized suspicion that criminal activity was afoot must be based on the entire picture—a totality of the surrounding circumstances." *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991), citing *Cortez*, *supra*, at 417-418; *State v. Bobo*,

37 Ohio St.3d 177 (1987); and *United States v. Rickus*, 737 F.2d 360, 365 (3d Cir.1984). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, *supra*, at 27.

{¶22} "[A] consensual encounter may escalate into an investigatory detention and seizure of a person that triggers Fourth Amendment scrutiny if, in view of all the circumstances surrounding the incident, a reasonable person would not feel free to leave or otherwise terminate the encounter." *Jones*, *supra*, at ¶21, citing *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984). "Factors suggesting that a seizure has occurred include the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the citizen." *Willowick v. Stephenson*, 11th Dist. Lake Nos. 98-L-144, *et seq.* 1999 WL 535280, *2 (July 16, 1999), citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "If the seizure is unlawful, any evidence obtained after the unlawful seizure must be suppressed as the 'fruit of the poisonous tree.'" *Jones*, *supra*, at ¶21, quoting *Wong Sun v. United States*, 371 U.S. 471 (1963); and citing *Mapp*, *supra*, at 654; *State v. Pierce*, 125 Ohio App.3d 592, 597 (10th Dist.1998).

{¶23} Deputy Sterrick initially approached appellant after arresting Stanley and asked to see appellant's identification. However, after confirming appellant was not the victim of a protection order against Stanley, Deputy Sterrick questioned appellant about whether she was in possession of drugs. When appellant gave an answer that was not acceptable to Deputy Sterrick, he told appellant that he planned to have his drug detection

7

dog walk around the car. Deputy Sterrick testified he informed appellant that "if [the dog] alerted to it and drugs were located on her person or within the vehicle, that I would charge her with falsification in addition to the drugs I found." This statement indicates appellant was to remain in the vehicle while the drug detection dog walked around it. Under these circumstances, a reasonable person would not feel free to leave or terminate the encounter. Therefore, we determine Deputy Sterrick's initial encounter with appellant was a consensual encounter that evolved into an investigative detention.

{¶24} The totality of the circumstances did not provide Deputy Sterrick with a reasonable suspicion of criminal activity afoot to justify the detention of appellant. Deputy Sterrick testified he was suspicious that appellant was in possession of drugs because she was associating with Stanley, who had been indicted on several "serious" crimes, and because upon being questioned, appellant responded that she was "not aware of" any drugs on her person or in the vehicle. Deputy Sterrick explained that in his years of experience and training, "routinely, the people that are involved in especially serious offenses of violence * * * are typically involved with drugs, and the people that are involved with drugs typically associate with others involved in drugs[.]" He further explained: "[T]he most common response in which I find illegal narcotics on a person is the response of, not that I know of. It's not a clear yes or no. It is a - - has an open-ended answer, and that raised my suspicion." Other than Deputy Sterrick's assumptions and "unparticularized suspicion," we find nothing in the record that would lead to a reasonable, articulable suspicion that appellant was in possession of drugs. Therefore, Deputy Sterrick's continued detention of appellant under threat of bringing in the drug detection

dog was unlawful, and the evidence obtained after the unlawful detention must be suppressed as "fruit of the poisonous tree."

{¶25} Appellee argues that Deputy Sterrick "was not violating the Fourth Amendment by advising Appellant that he would be conducting the sniff."

{¶26} In the context of traffic stops, this court explained in *Eggleston* that "'[t]he initial lawfulness of a traffic stop will not support a "fishing expedition" for evidence of a crime.'" *Eggleston*, *supra*, at ¶22, quoting *State v. Elliott*, 7th Dist. Mahoning No. 11 MA 182, 2012-Ohio-3350, ¶27. "'Once the suspicion which gave rise to the initial stop evaporated, any additional intrusion or detention had to have been supported by specific and articulable facts demonstrating the reasonableness of the continued detention.'" *Id.* at ¶23, quoting *State v. Colby*, 11th Dist. Portage No. 2002-P-0061, 2004-Ohio-343, ¶22; *see also Rodriguez v. United States*, 135 S.Ct. 1609 (2015), at syllabus ("Absent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures."). "Once it is determined that a delay occurred for the sole purpose of conducting a K–9 'sniff,' the question is not whether the delay was undue, but whether the delay was supported by a reasonable, articulable suspicion of drug activity." *Id.* at ¶28. In other words, as *Rodriguez* confirmed, absent a reasonable, articulable suspicion of criminal activity, *any* delay invokes the protections of the Fourth Amendment.

{¶27} The initial reason Deputy Sterrick approached appellant was to ascertain her identity and to secure the premises. The totality of the circumstances did not provide Deputy Sterrick with the reasonable, articulable suspicion necessary to extend the encounter for a canine sniff. *Compare State v. Valiente-Mendoza*, 6th Dist. Wood No.

WD-16-067, 2018-Ohio-3090, ¶36 (finding the totality of the circumstances provided the officers with the reasonable suspicion necessary to extend the consensual encounter in order to perform a canine sniff and an immigration inspection). Furthermore, in this case the drug dog never conducted a sniff of the vehicle, and, therefore, appellee's argument as it pertains to the propriety of a sniff of the vehicle is not at issue. At oral argument, counsel for appellee acknowledged there was a delay and that appellant would not have reasonably assessed that she was free to leave. Appellee's argument is not well taken.

{¶28} Appellee next argues that the search of appellant's purse was not a violation of her Fourth Amendment rights because she voluntarily consented to that search.

{¶29} "A consent to search obtained during an unlawful detention is invalid." *State v. Lett*, 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶25, citing *State v. Retherford*, 93 Ohio App.3d 586 (2d Dist.1994). "However, the Supreme Court of Ohio has held that voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *Id.* at ¶26, citing *Robinette*, *supra*, at 241, citing *Davis v. United States*, 328 U.S. 582, 593-594 (1946). "'Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave.'" *Id.* at ¶27, quoting *Robinette*, *supra*, at paragraph three of the syllabus.

{¶30} Appellant handed Deputy Sterrick the marijuana cigar after he indicated he was going to walk his drug dog around the vehicle. Deputy Sterrick testified that after appellant handed him the cigar, he "had asked [appellant] to hand [him] her purse, which

she did[.]" Deputy Sterrick's testimony indicates he directed appellant to hand him her purse rather than asking appellant whether he could search her purse. Taken with the other surrounding circumstances as analyzed above, a reasonable person under the totality of the circumstances would not have felt she could freely refuse the request or refuse to answer further questions and leave. Accordingly, we conclude appellant's consent to search her purse did not validate the otherwise illegal detention and search.

{¶31} Appellant's sole assignment of error has merit. Because the evidence was obtained as the result of an illegal detention, appellant's motion to suppress should have been granted.

{¶32} The judgment of the Ashtabula Municipal Court is reversed, and this matter is remanded for further proceedings.

CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

11